COMISIONADO DE SEGUROS DE PUERTO RICO, demandante y recurrente, *v.* ANGLO PORTO RICAN INSURANCE AGENCIES, INC., y JOSÉ ENRIQUE GONZÁLEZ, demandados y recurridos.

*Número:* O-68-131     *Resuelto:* 27 de junio de 1969

*J. F. Rodríguez Rivera, Procurador General Interino, y Américo
Serra, Procurador General Auxiliar, abogados del recurrente;
Benicio Sánchez Castaño, Benicio Sánchez Rivera, Gustavo
Adolfo del Toro y Ana R. Rodríguez Olazagasti, abogados de
los recurridos.*

Sala Segunda integrada por el Juez Asociado Señor Hernández
Matos como Presidente de Sala y los Jueces Asociados Seño-
res Santana Becerra, Dávila y Torres Rigual.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

La Anglo Porto Rican Insurance Agencies, Inc., es agente
de seguros. Miguel Negrón también lo es. En diciembre de
1965 el Vicepresidente Ejecutivo de la Anglo Porto Rican
Insurance Agencies, Inc., le remitió una carta al Presidente
de la corporación Los Robles Development Corp. con copia
al Sr. Miguel Negrón en la cual le explica las gestiones que
de acuerdo con el Código de Seguros corresponden a un
agente. Luego de esta explicación le expresa lo siguiente:

"In your case, we have gone a little further by providing
assistance to Mr. Negrón 'beyond and above the call of duty'.

For example, the preparation of an Insurance Survey of
all your policies and exposures is a duty of your agent, Mr. Ne-
grón. Since Mr. Negrón has no experience in preparing insur-
ance surveys, Mr. Bacó expressed his willingness to assist
Mr. Negrón in preparing one. However, the responsibility for
the preparation of the survey is still the responsibility of your
agent, Mr. Negrón.

Bob, I sincerely believe that you should discuss this with
Mr. Negrón so that he understands his duties and responsibili-
ties to you. If Mr. Negrón recognizes and accepts these duties
and responsibilities and furthermore, if you believe that Mr. Ne-
grón is willing and able to assume these obligations, then we
would be very happy to continue dealing with Mr. Negrón as
your agent.

On the other hand, if you prefer that we be directly responsi-
ble to you for all insurance matters, then we would be very
happy to accept the responsibility and to deal with you *direct*.

Please let me know your decision. If you would like to discuss this further with me, I would appreciate you let me know." (Subrayado en el original.)

El señor Negrón refirió la copia de la carta de González al Comisionado de Seguros. Se querelló de que la corporación que dirigía el señor González estaba tratando de eliminarlo del negocio de seguros. Así lo entendió el Comisionado y dictó orden contra los querellados para que comparecieran a una vista a mostrar causa por la cual no se le debía aplicar las sanciones que dispone el Código de Seguros.

Celebrada la correspondiente audiencia el Comisionado concluyó que:

"La motivación fundamental de esta carta es clara, el señor José E. González tenía interés en hacer el negocio directo y no tener que compartir comisiones con el agente Miguel A. Negrón.

Ahora, no nos interesa esa motivación, lo que sí nos interesa son los instrumentos usados para llevar a cabo esa finalidad. La violación no estriba en dicho motivo. Se trae a discusión la misma exclusivamente y para los únicos efectos de esclarecer la verdad, de comprensión, de tener todos los elementos del cuadro.

La infracción radica en el instrumento usado, esto es lo que la oficina objeta. La forma utilizada constituye más bien despojar de un negocio de seguro a su productor original. Suministrar una información errónea, falsa, en bien del interés propio, no es la competencia limpia que trae voluntariamente y sin presiones exteriores a un asegurado de un productor a otro.

Entendemos que el poseedor de una licencia emitida por esta oficina que se presta a usar estos métodos en sus negocios, no es competente ni confiable.

La función que se espera de un agente es la de procurar negocio, solicitarlo y colocarlo con el asegurador a través de la agencia.

La parte querellada trató de establecer durante la vista que el agente Negrón no fue lo suficientemente diligente para que no se cancelara la póliza del 'builders risk' depositando totalmente en él la responsabilidad de que eso no sucediera. Es lógico que un negocio de seguros de la magnitud del de las

empresas del señor Kellner ameritaba una participación técnica de la Anglo Porto Rican como agente general que, además, se está lucrando al participar en las comisiones de los negocios producidos por el señor Negrón. Esa intervención para ayudar al agente no ameritaba que se eliminara al señor Negrón como productor. Cuando hay un negocio de seguros del tamaño del de estas empresas, la política más sabia para retener el mismo no es depositar totalmente la responsabilidad absoluta de dicho negocio en el agente. El agente, el agente general y el asegurador, todos son piezas de una maquinaria que tiene un mismo fin. La falta de diligencia o la incompetencia del agente se refleja en la agencia general (quien escoge directamente los agentes) y por ende en el asegurador a quien la agencia general y el agente representan. Si el señor José E. González cumple con su obligación de ayudar al agente, de brindarle ayuda en la producción de un negocio, se está ayudando a sí mismo y al asegurador con quien está colocado dicho seguro.

El quedar bien el agente ante un asegurado, miembro del público consumidor de seguros, significa quedar bien la agencia general y el asegurador, y yendo más lejos, la industria de seguros en general."

Originalmente el Comisionado impuso una suspensión de un año pero luego la redujo a dos meses. Se acudió al Tribunal Superior. La decisión del Comisionado fue revocada. Acordamos revisar.

A pesar de que el juez de instancia interpreta correctamente la carta de la Anglo Porto Rican Insurance Agencies al exponer en su decisión que "En dicha carta el Señor González invita al Señor Kellner para que éste decida si prefiere que el Señor Miguel Negrón continúe gestionando sus seguros o que la Anglo Porto Rican Insurance Agencies atienda directamente dichos negocios" revocó porque entendió que el Comisionado había actuado sin jurisdicción y que como la carta fue notificada al señor Negrón y el señor Kellner no accedió a lo solicitado por González, nadie quedó afectado.

■ "El negocio de seguros siempre se ha considerado como investido de interés público . . . ." *Maryland Casualty*

*Co.* v. *San Juan Racing Assn. Inc.*, 83 D.P.R. 559, 563 (1961). Naturalmente esto impone una seria responsabilidad al Comisionado de Seguros de velar porque se cumplan estrictamente las normas y principios contenidos en el Código de Seguros.

Procede que examinemos las disposiciones correspondientes para determinar si el Comisionado actuó conforme a ley. En primer lugar consideraremos si la actuación de los querellados estaba proscrita por el Código. Luego determinaremos si el procedimiento empleado y la sanción impuesta se ajustan a derecho.

El Art. 27.040(5) del Código de Seguros, 26 L.P.R.A. sec. 2704, establece:

"Ninguna persona hará o divulgará oralmente o de alguna otra manera ningún anuncio, información, asunto, declaración o cosa que:

(1) .     .     .     .     .     .     .     .

(2) .     .     .     .     .     .     .     .

(3) .     .     .     .     .     .     .     .

(4) .     .     .     .     .     .     .     .

(5) Contenga una aseveración, representación o declaración falsa, falaz o engañosa con respecto al negocio de seguros o con respecto a una persona en el manejo de su negocio de seguros."

La anterior disposición fue la que el Comisionado determinó que los querellados habían violado. Pero el tribunal de instancia entendió que la referida sección "no tiene aplicación alguna en este caso y que dicha sección va dirigida a controlar aquellos anuncios u otras formas y métodos en publicaciones que tienden a mal informar o engañar al público. Definitivamente la carta escrita por el recurrente José Enrique González de fecha 7 de diciembre de 1965 no cae bajo el ámbito de esta sección."

■ Ciertamente el alcance del Art. 27.040 es mayor que el que dio el tribunal de instancia. Expresamente trata de ". . . anuncio, información, asunto, declaración o cosa . . . ." Sostener que la prohibición del citado artículo incluye solamente anuncios o publicaciones sería contrario al propósito expreso de todo el Capítulo 27 del Código de Seguros que es ". . . regular las prácticas comerciales en el negocio de seguros, definiendo o disponiendo para la determinación de todas las prácticas en Puerto Rico que constituyen métodos desleales de competencia, o actos o prácticas engañosas y prohibiendo las prácticas comerciales que así se definan o determinen." 26 L.P.R.A. sec. 2701. Las citadas disposiciones van dirigidas a eliminar todas las prácticas que constituyan una competencia desleal. No meramente anuncios o publicaciones de circulación general.

Tampoco es esencial que se tienda a mal informar o engañar al público en general según parece ser la interpretación del tribunal de instancia. Es el propósito regular y prohibir "todas las prácticas . . . que constituyen métodos desleales de competencia." Es incuestionable que la competencia desleal puede darse en relación a una persona únicamente o cliente individual.

Es evidente que la carta que dio margen a la querella contiene los ingredientes de una competencia desleal. Hemos visto que el propio juez de instancia así lo entendió. Como expresó el Comisionado en su resolución "La motivación fundamental de esta carta es clara, el Señor José E. González tenía interés en hacer el negocio directo y no tener que compartir comisiones con el agente Miguel A. Negrón." Y para ello no vacila en presentar al señor Negrón como una persona inexperta que necesitaba la ayuda de la organización que él dirigía.

La Sec. 27.170 del Código de Seguros, 26 L.P.R.A. sec. 2717, establece que "Si después de una vista, y previa noti-

ficación de la fecha y de los cargos contra una persona en Puerto Rico, el Comisionado determinare que dicha persona se ha dedicado o se dedica a realizar actos y prácticas definidas o prohibidas con arreglo a las secciones precedentes de este capítulo, dicho Comisionado ordenará a dicha persona que desista de dichos actos o prácticas."

Ya hemos visto que la acción de González está prohibida por el Art. 27.040 y el 27.020 dispone que "Ninguna persona se dedicará en Puerto Rico a ningún acto o práctica que se prohiba en este capítulo, o que se defina en el mismo, o se determine de acuerdo con el mismo como método desleal de competencia o acto o práctica injusta o engañosa en el negocio de seguros."

█ Así el Comisionado está autorizado para prohibir la práctica de que se querelló el señor Negrón. Nos falta considerar si la sanción impuesta está autorizada por el Código. El Art. 9.460 dispone que "el Comisionado podrá . . . suspender . . . una licencia expedida con arreglo a este capítulo, la de corredor le seguros excedentes, o la de agente general, por cualquier causa especificada en las disposiciones de este título o por cualquiera de los siguientes motivos: (a) . . . . . . . . (b) Por violar intencionalmente, dejar de cumplir o participar a sabiendas en la violación de cualquier disposición de este título o de cualquier regla, reglamento u orden legal del Comisionado." El querellado González incurrió en competencia desleal que hemos visto viola el Art. 27.040 y el Art. 9.460. Así el Código autoriza la suspensión de la licencia.

Ahora bien, nos parece que no está justificado hacer responsable a la agente general por un acto aislado de un ejecutivo. Y en cuanto al señor González estimamos que una suspensión por un término de treinta días es suficiente.

*Se dictará sentencia de conformidad a lo antes expuesto.*