SENTENCIA
Luego de analizar con detenimiento el expediente de este caso y los escritos de las partes, revocamos la determinación del Tribunal de Apelaciones y confirmamos la decisión administrativa. La multa de $10,000 que impuso la Oficina del Comisionado de Seguros a Triple-S Salud, Inc. está justificada por la evidencia sustancial que obra en el expediente administrativo.
Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor Martínez Torres emitió una opinión de conformidad, a la cual se unió el Juez Asociado Señor Feliberti Cintrón. El Juez Asociado Señor Estrella Martínez emitió una opinión disidente, a la cual se unieron la Jueza Asociada Señora Pabón *537 Charneco, el Juez Asociado Señor Kolthoff Caraballo y el Juez Asociado Señor Rivera García.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

Opinión de conformidad emitida por el
Juez Asociado Señor Martínez Torres, a la que se unió el Juez Asociado Señor Feliberti Cintrón.
El Tribunal de Apelaciones utilizó el principio de proporcionalidad de la sanción como escrutinio de revisión judicial en la decisión administrativa que nos ocupa. Ese principio ha sido rechazado consistentemente por este Tribunal. Véanse: Com. Seg. P.R. v. Antilles Ins. Co., 145 DPR 226, 233-234 (1998), reafirmado en Comisionado de Seguros v. PRIA, 168 DPR 659, 667-668 (2006). En esa jurisprudencia reconocimos la discreción que tienen las agencias administrativas al momento de seleccionar las medidas que les ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado. A tenor con lo resuelto en esos casos, ausente un abuso de discreción, procede revocar al Tribunal de Apelaciones y confirmar la decisión administrativa. Por eso estoy conforme con la Sentencia que hoy emite este Foro.
I
El 30 de junio de 2009, el Hospital del Maestro presentó ante la Oficina del Comisionado de Seguros (OCS) una reclamación en contra de Triple-S Salud, Inc. (Triple-S) por su incumplimiento con el pago de un servicio de salud (procedimiento 0272-19499), prestado el 17 de julio de 2008 a la paciente asegurada Yolanda Rodríguez Colón.
En esa solicitud, el Hospital del Maestro indicó que la señora Rodríguez Colón recibió unos servicios en la insti *538 tución hospitalaria el 17 de julio de 2008 y que se facturó electrónicamente al plan en septiembre de 2008. Señaló que el plan emitió un pago parcial el 26 de septiembre de 2008, pero no cubrió parte de la cuenta. El 6 de octubre de 2008 nuevamente se presentó a Triple-S la factura, pero no hubo contestación.
El 22 de octubre de 2009, la OCS notificó a Triple-S de la solicitud de intervención y requirió que, en el término de quince días, le sometiera evidencia del pago del procedimiento 272-19499, así como la copia de la contestación a la querella presentada por el Hospital del Maestro. En esa carta también se apercibió a Triple-S que no contestar en el término indicado constituiría una obstrucción al poder de investigación que tiene el Comisionado de Seguros.
El 27 de octubre de 2009 Triple-S presentó a la OCS una moción para obtener el formulario de solicitud de intervención y cualquier prueba documental que obrara en el expediente. Así también requirió que, una vez se proveyera lo solicitado, se concediera un nuevo término para contestar la carta. El 2 de marzo de 2010, tras haber transcurrido el término de quince días y sin que la OCS le concediera un término adicional, Triple-S solicitó el cierre y el archivo de la investigación, pues no se le habían suministrado los documentos solicitados. La OCS notificó a Triple-S que no habían sometido la información solicitada y le concedió hasta el 28 de junio de 2010 para así hacerlo. El 30 de junio de 2010 Triple-S presentó su contestación e indicó que ya había provisto lo requerido el 2 de marzo de 2010.
Luego de realizar la investigación correspondiente, la OCS emitió una orden en la cual imputó a Triple-S haber violado los Arts. 2.130, 30.030 y 30.070 del Código de Seguros de Puerto Rico, 26 LPRA sees. 245, 3002 y 3006, así como de los Arts. 4, 8 y 11 de la Regla Núm. 73 del Reglamento Núm. 6559, Enmienda a la Regla 73 de las Normas para Regular el Pago Puntual de Reclamaciones a los Pro *539 veedores de Salud, Reglamento Núm. 8197 del Departamento de Estado de 11 de mayo de 2012, y del Art. 6 de la Regla I-A del Reglamento Núm. 5266 de 3 de julio de 1995, conocido como el Reglamento del Código de Seguros. Las violaciones consistieron en que, alegadamente, Triple-S: (1) no presentó evidencia del pago de la reclamación ni de los intereses legales correspondientes, según le requirió la OCS en dos ocasiones; (2) no pagó el servicio prestado por el hospital ascendente a $348 (procedimiento 0272-19499) ni los intereses legales, y (3) no contestó la querella que presentó el Hospital del Maestro en el término dispuesto para ello. En virtud de lo anterior, la OCS impuso a Triple-S una multa administrativa de $10,000 y le ordenó pa-gar el servicio no pagado, junto con los intereses legales correspondientes.
Inconforme, Triple-S solicitó una vista administrativa, la cual, luego de varios incidentes procesales, se celebró. En esa vista, las partes presentaron amplia prueba documental. También, la OCS presentó el testimonio de la Sra. Inarvis Bonilla Vélez, Analista de Reclamaciones de la Unidad de Pago Puntual de la OCS. Triple-S presentó el testimonio de la Sra. Virginia Rivera Carrión, supervisora de su Departamento de Relaciones Profesionales.
En virtud de esos hechos, la OCS confirmó la Orden emitida junto con la multa administrativa impuesta de $10,000. Triple-S presentó una reconsideración, que se declaró “no ha lugar”.
En desacuerdo, Triple-S presentó un recurso de revisión administrativa ante el Tribunal de Apelaciones. Sostuvo que la OCS erró al determinar que Triple-S no objetó ni notificó como no procesable la reclamación del procedimiento 0272-19499, pues del expediente surgía la evidencia de esa notificación. Por último, argumentó que la OCS violó su debido proceso de ley sustantivo, al imponerle una multa desproporcionada e irrazonable en comparación con las faltas alegadas.
*540 Posteriormente, la OCS presentó su oposición. Señaló que de la prueba vertida en el juicio surgía claramente que Triple-S no notificó al Hospital su objeción respecto a la reclamación del procedimiento 0272-19499. Añadió que la multa no era desproporcionada, pues a Triple-S no se le sancionó por una sola falta, sino por múltiples violaciones al Código de Seguros y a su Reglamento.
Luego de varios incidentes procesales, el Tribunal de Apelaciones notificó una sentencia en la que confirmó la resolución recurrida y la multa. Resolvió que Triple-S había cometido las violaciones imputadas por la OCS al Código de Seguros y a su Reglamento. En consecuencia, determinó que la OCS estaba facultada para imponer la multa de $10,000 y que dicha imposición no fue ilegal, irrazonable o arbitraria.
El 21 de junio de 2013, Triple-S presentó una moción de reconsideración. Argüyó que la multa era desproporcionada e irrazonable, porque era 29 veces mayor a la cuantía de la falta cometida. En su consecuencia, solicitó que se modificara la sentencia y que se atemperara la multa impuesta para que su cuantía guarde proporción con las faltas en que incurrió Triple-S.
El Tribunal de Apelaciones reconsideró y redujo la multa de $10,000 a $1,000, para que reflejara “la proporcionalidad equitativa” a la falta cometida y se evitara una “injusticia”.
Inconforme, la OCS presentó una solicitud de certiorari ante este Tribunal, en la que señaló que el foro apelativo intermedio erró al sustituir el criterio de la OCS por el suyo y reducir la multa administrativa impuesta a Triple-S por varias infracciones al Código de Seguros y su Reglamento. También expresó que el Tribunal de Apelaciones incidió al no brindarle deferencia a la determinación administrativa respecto a la multa impuesta, haciendo completa abstracción de los precedentes judiciales en torno al alcance de la revisión judicial de las determinaciones administrativas que imponen sanciones.
*541 El 28 de febrero de 2014 emitimos una Resolución en la que ordenamos a Triple-S que mostrara causa por la cual no se debía revocar el dictamen recurrido. Nuestra orden se cumplió. Con el beneficio de la comparecencia de ambas partes, resolvemos.
II
Nuestro derecho administrativo reconoce que los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. OCS v. Universal, 187 DPR 164, 178 (2012); The Sembler Co. v. Mun. de Carolina, 185 DPR 800, 821 (2012); Torres Santiago v. Depto. Justicia, 181 DPR 969, 1002 (2011); Vélez v. A.R.Pe., 167 DPR 684, 693 (2006). Esos procesos están cobijados por una presunción de regularidad y corrección. Id.; Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). Por eso, la revisión judicial se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal o irrazonable. O.E.G. v. Rodríguez, 159 DPR 98, 119 (2003). Las conclusiones de derecho se revisarán en todos sus aspectos. See. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 LPRA see. 2175. Ahora bien, los tribunales no deben descartar libremente las conclusiones de derecho hechas por las agencias administrativas. Torres Santiago v. Depto. Justicia, supra, pág. 1003. Por el contrario, deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que administran. Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).
La deferencia que se reconoce a las decisiones de las agencias administrativas cederá cuando no se fundamenten en evidencia sustancial, cuando la agencia se equivoque en la aplicación de una ley o cuando la actuación sea *542 arbitraria, irrazonable o ilegal. OCS v. Universal, supra, pág. 179.
Este Tribunal, en Com. Seg. P.R. v. Antilles Ins. Co., supra, págs. 233-234, rechazó expresamente adoptar en nuestra jurisdicción el principio de proporcionalidad como escrutinio en la revisión judicial de las decisiones administrativas. Véase, además, Comisionado de Seguros v. PRIA, supra, págs. 667-668. Allí mencionamos, en particular:
Respecto a la revisión de la facultad para imponer sanciones, los tribunales también le han reconocido mucha discreción a las agencias administrativas en la selección de las medidas que le ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre que actúen dentro del marco de su conocimiento especializado y de la ley. En estos casos, la revisión judicial no será para determinar si la sanción impuesta guarda proporción con la conducta por la cual se impone la sanción ni si la sanción es demasiado fuerte. Esta evaluación corresponde hacerla a la propia agencia, quien por su experiencia especializada es quien está en la mejor posición para conocer los efectos de una violación a los intereses protegidos y cuya agencia, al mismo tiempo, asegura cierto grado de uniformidad y coherencia en la imposición de sanciones. Kulkin v. Bergland, 626 F.2d 181 (1er Cir. 1980). En estos casos, la revisión judicial se limitará a evitar que las agencias actúen en forma ilegal, arbitraria, en exceso de lo permitido por ley o en ausencia de evidencia sustancial que justifique la medida impuesta, de modo que se evidencie una actuación caprichosa o en un abuso de discreción por parte de la agencia. (Enfasis nuestro y escolio omitido). Com. Seg. P.R. v. Antilles Ins. Co., supra, págs. 233-234. Véase, además, D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Colombia, Ed. Forum, 2013, pág. 98.
Lo que resolvimos en Com. Seg. P.R. v. Antilles Ins. Co., supra, reafirmado en Comisionado de Seguros v. PRIA, supra, no significa que no podemos intervenir cuando una multa es irrazonable. Como menciona el Prof. Demetrio Fernández en su tratado,
[e]l criterio de la razonabilidad de la multa es fundamental para que en revisión se reconozca la validez de la acción *543 tomada. Su imposición se examina en revisión como parte de la amplia discreción que los tribunales han destacado que los organismos administrativos gozan en la selección de las medidas para cumplir con el fin de la legislación. (Énfasis suplido). Fernández Quiñones, op. cit., pág. 109.
En fin, hemos expresado de manera consecuente que los tribunales no pueden descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de esta por el propio. Torres Santiago v. Depto. Justicia, supra, pág. 1003; Martínez v. Rosado, 165 DPR 582, 589 (2005); P.R.T.C. v. J. Reg. Tel. de P.R., 151 DPR 269, 282 (2000). “Aun en casos marginales o dudosos en que la interpretación de la agencia no sea la única razonable, la determinación de la agencia merece deferencia sustancial”. Torres Santiago v. Depto. Justicia, supra, pág. 1003. Véase, además, De Jesús v. Depto. Servicios Sociales, 123 DPR 407, 417-418 (1989).
III
En su dictamen, el Tribunal de Apelaciones analizó de novo la proporcionalidad entre la sanción administrativa impuesta y la conducta sancionada. Esa actuación es contraria a lo que resolvimos en Com. Seg. P.R. v. Antilles Ins. Co., supra, reafirmado en Comisionado de Seguros v. PRIA, supra. En esas decisiones expresamos diáfanamente que la revisión judicial no es para determinar si la sanción impuesta guarda proporción con la conducta sancionada. También indicamos que los foros administrativos merecen deferencia en la ejecución de las leyes y reglamentos cuya administración e implantación se les ha delegado. Precisamente, la decisión del Tribunal de Apelaciones hizo caso omiso a la doctrina de la delegación de poderes a los entes administrativos. Sánchez et al. v. Depto. Vivienda et al., 184 DPR 95, 119-122 (2011). Reafirmando a Luce & Co., v. Junta Salario Mínimo, 62 DPR 452, 464 (1943), en Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670, 692-693 (1953), mencionamos que
*544 [...] el mundo moderno se caracteriza por la gran complejidad en las relaciones sociales y económicas de las personas, conjuntamente con la progresiva supervisión gubernativa sobre la conducta individual, y ello implica que la legislatura está imposibilitada de anticipar legislativamente, en forma detallada, minuciosa o específica, la multiplicidad de situaciones que puedan surgir de esas relaciones complejas, siendo suficiente el que la ley en cuestión señale o establezca normas amplias y generales que sirvan de guía o dirección a entidades administrativas expertas, para que éstas, con su experiencia y conocimientos especiales, apliquen esas normas concretamente a los hechos que puedan surgir y ultímenlos detalles que implementen la política general legislativa. (Enfasis nuestro).
En este caso no puede haber duda de que es la OCS y no la Rama Judicial quien tiene el peritaje para regular la ex-tensa y compleja reglamentación en el campo de seguros. Así lo hemos reconocido por varias décadas. Jiménez López et al. v. SIMED, 180 DPR 1, 8 (2010); Comisionado de Seguros v. PRIA, supra; Com. Seg. P.R. v. Antilles Ins. Co., supra; Comisionado de Seguros v. Bradley, 98 DPR 21, 29 (1969); Comisionado v. Anglo Porto Rican, 97 DPR 637 (1969); Maryland Cas’y Co. v. San Juan Rac’g Assoc., Inc., 83 DPR 559, 563 (1961).
Hemos indicado que la industria de seguros “está revestida de un gran interés público debido a su importancia, complejidad y efecto en la economía y la sociedad”. Jiménez López et al. v. SIMED, supra, pág. 8. Véanse, además: S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372 (2009); Echandi Otero v. Stewart Title, 174 DPR 355 (2008); Comisionado de Seguros v. PRIA, supra. Por ello, el negocio de seguros es reglamentado extensamente por el Estado mediante la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como el Código de Seguros de Puerto Rico, 26 LPRAsec. 101 et seq. En nuestro ordenamiento, la Asamblea Legislativa ha delegado a la OCS el poder de fiscalizar y reglamentar la industria de seguros, además de velar por el cumplimiento de las disposiciones del Código de Seguros de Puerto Rico. Art. 2.030 del Código de Seguros de Puerto Rico, 26 LPRA see. 235. Véanse, además: *545 Jiménez López et al. v. SIMED, supra, pág. 8; R. Cruz, Derecho de Seguros, San Juan, Ed. JTS, 1999, pág. 1.
Conforme con nuestra jurisprudencia, solo podemos revocar la decisión de la OCS si hubo un error en la aplicación de una ley o cuando la actuación sea arbitraria o irrazonable. OCS v. Universal, supra, pág. 179. Aquí la multa de $10,000 impuesta a Triple-S no se excedió de lo permitido por ley. Véanse: Art. 2.130 del Código de Seguros de Puerto Rico, 26 LPRA see. 245(2), (“[t]oda persona que obstruya, ayude o contribuya a la obstrucción, dilación o entorpecimiento de la investigación podrá ser sancionada con una multa administrativa no menor de quinientos [dólares] ($500) ni mayor de diez mil dólares ($10,000)” [corchetes en el original]); Art. 2.250 del Código de Seguros de Puerto Rico, 26 LPRA see. 257, (“violaciones a las disposiciones de este Código [...] están sujetas a una multa administrativa no menor de quinientos [dólares] ($500) ni mayor de diez mil dólares ($10,000) por cada violación” [corchetes en el original]). En este caso Triple-S no violó una sino varias disposiciones legales. Arts. 2.130, 30.030 y 30.070 del Código de Seguros de Puerto Rico, supra; Arts. 4, 8, y 11 de la Regla Núm. 73, supra, y Art. 6 de la Regla I-A, supra. No se puede concluir con rigor que la OCS erró al interpretar la ley. La OCS tenía autoridad legal para imponer la multa de $10,000. Más aún, OCS tenía autoridad para imponer hasta una multa de $20,000 a Triple-S, ya que la falta por no pagar el procedimiento 0272-19499 es distinta e independiente del incumplimiento que conllevó no contestar la querella administrativa en el término correspondiente.
Por lo tanto, resta dilucidar si la OCS actuó de forma arbitraria o irrazonable al imponer la multa. Un análisis acucioso del expediente revela que la actuación de la OCS fue razonable a la luz de las circunstancias del caso. Existe evidencia sustancial en el expediente que establece que Triple-S: (1) no presentó evidencia del pago de la reclamación ni de los intereses legales correspondientes, según la OCS le requirió en dos ocasiones; (2) no pagó el servicio *546 que el Hospital prestó con un costo de $348 (procedimiento 0272-19499) ni los intereses legales, y (3) no contestó la querella que le presentó el Hospital del Maestro en el término dispuesto para ello. No se destruyó la presunción de corrección que cobija a toda determinación administrativa. Como menciona el profesor Fernández Quiñones, los tribunales sí examinan la razonabilidad de la multa “como parte de la amplia discreción que los tribunales han destacado que los organismos administrativos gozan en la selección de las medidas para cumplir con el fin de la legislación”. Fernández Quiñones, op. cit, pág. 109. Lo que no examinan es su proporcionalidad. La multa de $10,000 está más que justificada por el expediente administrativo.
Adoptar el principio de proporcionalidad, según enunciado en la sentencia del Tribunal de Apelaciones y en la opinión disidente del compañero Juez Asociado Señor Estrella Martínez, sería una carta blanca para que el Poder Judicial se inmiscuya indebidamente en la política pública que permea las decisiones de las agencias administrativas. Este Tribunal ha repetido hasta el cansancio que la política pública en esta jurisdicción la establece la Asamblea Legislativa. AAR, Ex parte, 187 DPR 835 (2013); Lozada Sánchez et al. v. JCA, 184 DPR 898 (2012); Delgado, Ex parte, 165 DPR 170, 192-193 (2005). Mencionamos en Lozada Sánchez et al. v. JCA, supra, págs. 925-926, que:
[...] no intervendremos con las decisiones de las otras ramas de gobierno, a menos que la actuación de algunas de estas vaya en contra de la Constitución o alguna ley en específico. Adviértase que a este Foro no le corresponde establecer la política pública que debe regir en las otras ramas de gobierno. El día que hagamos eso, quebrantaremos el principio de separación de poderes, firmemente arraigado en nuestro sistema de derecho. (Enfasis en el original).
Imponer al Poder Judicial la obligación de examinar de novo la proporcionalidad de una multa implica que de hoy en adelante es lícito que los tribunales pasen juicio sobre la política pública que llevó a la agencia a imponer la multa en cuestión.
*547 Además de ser contrario a todos nuestros precedentes, el principio de proporcionalidad es impráctico y este caso lo demuestra. La OCS impuso una multa de $10,000, el Tribunal de Apelaciones la redujo a $1,000 y la opinión disidente del compañero Juez Asociado Señor Estrella Martínez la reduciría a $5,000. ¿Por qué en este caso una multa de $5,000 es más “proporcional” que los $10,000 que impuso la OCS o los $1,000 que fijó el foro apelativo intermedio? ¿Por qué en este caso una multa de $9,000 no es más “proporcional” que una de $1,000? ¿Sería “proporcional” una de $8,000? ¿Y una de $7,000? ¿Por qué no $6,000? ¿Qué factores concretos tendrían que evaluar los tribunales para examinar la “proporcionalidad”? Estas preguntas se dejaron sin responder.
La adjudicación correcta de este caso requiere que revoquemos al Tribunal de Apelaciones y confirmemos la multa que OCS impuso por estar justificada por la evidencia sustancial que obra en el expediente administrativo.
IV
Por los fundamentos antes expuestos, estoy conforme con la Sentencia de este Tribunal que emite un auto de certiorari, revoca la determinación del Tribunal de Apelaciones y confirma la decisión administrativa. La multa de $10,000 que impuso la OCS a Triple-S está justificada por la evidenciasustancial que obra en el expediente administrativo.